Case 2:17-cv-00374   Document 22   Filed on 11/05/18 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
November 05, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR JAMES CHAPPELL, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-374 |
| | § | |
| R. S. SALINA, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Bureau of Prisons (BOP) and currently is incarcerated at the Federal Correctional Institution (FCI) in Three Rivers, Texas. Proceeding *pro se*, Petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2241 on December 7, 2017 (D.E. 1). Petitioner argues that his due process rights were violated in a disciplinary hearing because there was insufficient evidence to support the finding of guilt and because he had no way of knowing that the conduct in which he engaged was prohibited. Respondent filed an answer and a motion for summary judgment on October 3, 2018, to which Petitioner responded on October 15, 2018 (D.E. 14, 15). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Petitioner's cause of action for habeas corpus relief be denied.

## JURISDICTION

This Court has jurisdiction and venue is appropriate in this division because petitioner is incarcerated in Live Oak County, Texas, which is located in the Corpus

1 / 12

Christi Division of the Southern District of Texas.  *See* 28 U.S.C. §§ 1331 and 2241; *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a 336-month sentence with a lifelong period of supervised release for multiple counts related to sex-trafficking of a minor, child pornography, and running a prostitution enterprise (D.E. 20 at pp. 2-3).  He does not complain about his holding convictions, but challenges the results of a disciplinary hearing.  In incident report number 2971957, Petitioner was accused of "Use of telephone for abuses other than illegal activity" in violation of Code 297 (Incident Report, Att. 5 to Mot. for Sum. Jmt., D.E. 20-1 at p. 25).

According to the incident report, on April 7, 2017, Lt. D. Johnson was listening to inmates' recorded telephone conversations when he heard Petitioner make a phone call to his parent.  Eighteen seconds after Petitioner placed the call, a woman answered and she and Petitioner spoke for one minute and eighteen seconds, when the woman said, "Your brother is calling."  At approximately one minute and forty-six seconds into the call, another phone was heard to ring and the woman answered the second phone and said, "I'm talking to your brother."  Petitioner continued to talk and the woman was passing information from each caller to the other.  At three minutes and forty-six seconds, it appeared that the woman put the man from the other call on a speaker phone and the two men had a conversation (*Id.*)  Prison officials characterized this call as a three-way call, and such calls are forbidden by the BOP. (*See* Admission and Orientation Inmate Handbook, Ch. II, Pt. D; D.E. 20-2 at pp. 16-17).

During the investigation, Petitioner stated that the call was not a three-way call and that he never told his mother to put the call on speaker.  He also stated that he had been trying to make contact with his brother but it was not his intention to violate policy (Incident Report, Att. 5 to Mot. for Sum. Jmt., D.E. 20-1 at p. 25).  The disciplinary committee reviewed the charge and Petitioner's statement, and referred the incident to the Disciplinary Hearing Officer (DHO) for a hearing.  The committee suggested that the DHO might consider dropping the charge from a "297" to a "397"[1] because the situation sounded more like a conference call than a three-way call (*Id.*)

At a disciplinary hearing held on May 4, 2017, it was noted that Petitioner was charged with violating Code 297.  Petitioner stated that he called his mother and she made the other call on her cell phone and put it on speaker.[2]  He stated that he did not know she was going to do that and had no control over the situation (DHO Report, Att. 4 to Mot. for Sum. Jmt.; D.E. 20-1 at p. 17).  It also was noted on the form that Petitioner admitted to the allegation (*Id.*)  The DHO found that the written report of the charging officer along with Petitioner's testimony that he remained on the call once the cell phone was placed on speaker phone and Petitioner talked to his brother supported a finding that

---

[1] A "297" is a violation for use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor the frequency of telephone use, content of the call, or the number called; or to commit or further a high category prohibited act.  A "297" is considered a high severity level violation.  (Admission and Orientation Inmate Handbook—Table 3; D.E. 20-2 at p. 66).  A "397" is the use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a moderate category prohibited act.  A "397" is considered a moderate severity level violation.  (*Id.*, D.E. 20-2 at p. 68).

[2] This statement is clarified in the Amended DHO report.

Petitioner violated Code 297 (*Id.* at p. 18).  Petitioner was punished with the loss of telephone privileges for ninety days and also with the loss of twenty-seven days of good time.  The report was delivered to Petitioner on the morning of May 10, 2017 (*Id.*)

Immediately after Petitioner received a copy of the report, he spoke to a woman in the Captain's office and told her that he had not, in fact, admitted guilt and had denied making a three-way call (D.E. 1 at pp. 2-3).  On that same day, in the afternoon, Petitioner was given an amended copy of the disciplinary report, where it was noted that he had denied the charge.  The amended DHO report summarized Petitioner's hearing statement in a slightly different manner than in the original report,[3] but continued to reflect Petitioner's claim that he had no ability to control what his mother did during the call.  The amended DHO report also found that Petitioner had committed the telephone use violation (Amended DHO report, D.E. 20-1 at p. 19).

Petitioner administratively appealed the decision of the DHO and it was upheld at every level of the administrative review process (Att. 6 to Mot. for Sum. Jmt., D.E. 20-1 at pp. 27-33).  He filed this habeas action on December 7, 2017 and makes the following arguments: (1) His right to due process was violated when a finding of guilt was based on a conversation between himself and the woman in the Captain's office, rather than on the evidence presented at the disciplinary hearing; (2) Evidence did not support a finding that Petitioner violated Rule 297 because he did not circumvent BOP telephone monitoring

---

[3] The amended report reflected that Petitioner had called his mother and that her cell phone rang during the call; the report further reflected that Petitioner's mother placed the cell phone on speaker phone and Petitioner talked to his brother (Amended DHO report, D.E. 20-1 at p. 14).

procedures; and (3) Petitioner was not given notice that his conduct violated a BOP rule because there is no prohibition against conference calls.

## APPLICABLE LAW

### A. Due Process Rights

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In *Sandin v. Conner*, 515 U.S. 472 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that under certain circumstances a state may create liberty interests which are protected by the Due Process Clause. *Id.* at 483-484 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)). However the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that while prisoners do not shed all constitutional rights at the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977) and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created

liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S at 484). Petitioner's complaints are examined in light of this standard.

**B.  Loss of Telephone Privileges**

To the extent Petitioner is complaining about the loss of telephone privileges, he has failed to state a claim for a due process violation because such a loss does not impose an atypical or significant hardship in relation to ordinary prison life. *Sandin*, 515 U.S. at 484. *See also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (finding that thirty-day commissary and cell restrictions as punishment were merely changes in the conditions of confinement and did not implicate due process concerns) and *Wilson v. Davis*, No. 3:18-CV-0097, 2018 WL 2234839 (S.D. Tex. 2018) (noting that loss of recreation, commissary, and telephone privileges does not demonstrate a constitutional violation).  Accordingly, any claim Petitioner makes for loss of telephone privileges should be dismissed for failure to state a claim.

**C.  Loss of Good Time**

Petitioner lost twenty-seven days of good time and it is well-established that inmates have a liberty interest in the forfeiture of good time credits. *See Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000) (applying *Madison*, 104 F.3d at 768, to federal inmates).  Thus, good time credits can only be taken from a prisoner in a manner that comports with due process.

The Supreme Court described the process due a prisoner accused of a disciplinary infraction in *Wolff*, 418 U.S. at 564:  (1) He must receive written notice of the charges;

(2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.

Petitioner in this case received written notice of the charges and the hearing officer made a written record noting the evidence relied on to find petitioner guilty. Nothing in the record indicates that Petitioner was not allowed to present witnesses or documentary evidence.

Petitioner argues that he was denied due process because the DHO report was amended following his complaint that the original report said he admitted to the charges when he had not. He asserts that he was entitled to another hearing based on the clarification. However, the change in the DHO report did not prejudice Petitioner in any way. Rather, it simply clarified that Petitioner had in fact denied that the allegation that he had knowingly engaged in a three-way call. The finding of guilt was still based on the charging officer's report and on Petitioner's testimony that although he did not know his mother was going to facilitate his speaking to his brother via speaker phone and the use of another phone, he continued to participate in the call once it began. Accordingly, summary judgment should be entered for Respondent on this issue because Petitioner received the due process at the hearing and has failed to state a claim for relief.

Petitioner also asserts that his due process rights were violated because there was insufficient evidence presented at the hearing to show that he had violated the telephone policy. However, it is not the job of the courts to assess the weight of the evidence when

reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). As long as a hearing officer's decision is supported by some evidence and the requirements of *Wolff* have been met, the decision cannot be disturbed on judicial review. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent Mass. Corr. Institution v. Hill*, 472 U.S. 445, 455-456 (1985); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

In this case, the charging officer's description of the telephone call was evidence that Petitioner had participated in a a three-way call. Petitioner also conceded at the hearing that he spoke to his brother via speaker phone although Petitioner did not realize it was a violation of BOP telephone regulations to do so. Both of these statements provide support for the hearing officer's finding that Petitioner participated in a three-way call in violation of BOP telephone policies. Therefore, it is recommended that summary judgment be entered for Respondent on this issue.

Finally, Petitioner argues that he was deprived of due process because he had no way of knowing that participating in the call was a violation of BOP policies. "The Fifth Circuit has expressly held that it is a violation of due process to punish inmates for acts which they could not have known were prohibited." *Reeves v. Pettcox*, 19 F.3d 1060, 1061 (5th Cir. 1994) (per curiam) (citing *Adams v. Gunnell*, 729 F.2d 362, 369-370 (5th Cir. 1984)). Inmates are entitled to prior notice or fair warning of prohibited conduct before a severe penalty can be imposed. *Id.* "[B]ecause we assume that man is free to

steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

In *Reeves*, an inmate was charged and found guilty of placing his food tray in the "run" outside his cell when prison rules required that trays remain in cells until they were picked up.  Evidence showed that the inmate had never received a copy of the rules setting forth the requirement and had no opportunity to read a notice of the rule on a bulletin board where it was posted.  The court found that the inmate did not receive fair warning or an opportunity to know that his conduct was prohibited before he could be punished for it.  *Reeves*, 19 F.3d at 1062.

Similarly, the Fifth Circuit found that an inmate could not be punished for possessing materials related to the Uniform Commercial Code (UCC) without having received prior notice that such possession had been prohibited.  *Canady v. Davis*, 687 Fed. Appx. 362, 366 (5th Cir. 2017) (per curiam).  "If they had previously approved or made available UCC material, prison officials needed to notify inmates that the material was no longer permitted *before* taking disciplinary action against them and give inmates an opportunity to dispose of the contraband."  *Id.* (emphasis in original).

However, if a rule or policy would signal to a person of ordinary intelligence that particular conduct was prohibited, the rule is sufficient to confer notice and may serve as the basis of a disciplinary p`roceeding.  *Evans v. Martin*, 496 Fed. Appx. 442, 446 (5th Cir. 2012) (per curiam).  In *Evans*, an inmate was disciplined for possessing a cell phone, even though cell phones were not expressly prohibited.  Prison officials considered the

cell phone to be a "hazardous tool," based on the definition of "hazardous tools" as those "most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g. hacksaw blade." *Id.* at 444 (citing 28 C.F.R. § 541.13 (2009).[4] The court found that because prisoners knew that their access to telephones was extremely limited and highly regulated, and because a cell phone could be used to plan an escape or to undermine safety and security, the inmate had knowledge that possession of the cell phone was prohibited based on the prohibition of hazardous tools. *Id.* at 445-446.

In this case, the inmate handbook describes the phone privileges accorded to prisoners as part of a system known as TRUFONE (Admission and Orientation Inmate Handbook, Ch. II, Pt. D; D.E. 20-2 at pp. 16-17). Inmates are allowed to place up to thirty names and numbers on their TRUFONE account. Calls are limited to fifteen minutes and inmates must wait thirty minutes between calls. Three-way calls are prohibited (*Id.*)

Neither Code 397 or 297 specifically describes conference calls as being prohibited. However, Code 297, for which Petitioner was found guilty, prohibits activity which circumvents the ability of staff to monitor the content of a call or the number called (Admission and Orientation Inmate Handbook—Table 3; D.E. 20-2 at p. 66). By participating in the conversation with his brother, Petitioner spoke to someone calling

---

[4] The regulation was subsequently amended to include portable phones and other electronic devices. *Evans*, 496 Fed. Appx. at 444 and n. 1.

from a number which was not known to prison officials.[5]  If illegal conduct or inappropriate matters were discussed, prison officials would be unable to prohibit calls to or from that person's phone.  Petitioner had notice that this conduct was prohibited and when he continued to participate in the call, he violated BOP telephone policy.  Accordingly, Petitioner had prior notice that his participation in the call violated BOP rules and he thus failed to state a claim that his due process rights were violated.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 20) be GRANTED and Petitioner's application for habeas corpus relief be DENIED.

Respectfully submitted this 5th day of November, 2018.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

---

[5] The Incident Report stated that "the inmate did circumvent the staff's ability to monitor the call . . . ," citing directly from Rule 297's prohibition of three-way calls (Incident Report, D.E. 20-1 at p. 25).

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).